IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| THEODORE L. HANSEN; INTERSTATE ENERGY CORP.; TRIPLE M, L.L.C., <br><br> Plaintiffs, <br><br><br> vs. <br><br><br> NATIVE AMERICAN OIL REFINERY COMPANY; PT. BANK NEGARA INDONESIA (PERSERO), EKO BUDIWIYONO, DRS. FIRMANSYAH, GATOT SISMOYO, RACHMAT WIRIATMAJA, YOPIE LAMONGE, MAX NIODE, LILLES HANDAYANI, UTTI KARIAYAM, MUBARIK AS DJATIMUDA, STEVE O.Z. FINKEL-MINKIN, A.K.A. STEVE FINKEL; ROBERT MCKEE; FRED NEWCOMB; NEWCOMB & COMPANY and DOES 1-20, <br><br> Defendants. | MEMORANDUM DECISION AND ORDER <br><br><br><br> Case No. 2:06-CV-109 <br> Judge Dee Benson |

Before the court is defendant PT. Bank Negara Indonesia (Persero)'s motion for summary judgment on plaintiffs' Second Amended Complaint. Oral argument was presented on January 18, 2012. The court granted the motion from the bench promising to follow-up its decision with a written order. The court now issues the following order.

## BACKGROUND FACTS

Consistent with Rule 56 of the Federal Rules of Civil Procedure, the following facts are described in the light most favorable to the non-moving parties.

Plaintiff Theodore Hansen ("Hansen") is a resident of Utah who owned and acquired substantial assets including gas stations, convenience stores, property, and other businesses in Utah, Idaho and Wyoming. (Second Amended Complaint, Dkt. No. 65, ("SAC") ¶¶ 1, 15.) Hansen, along with his affiliated entities, plaintiffs Interstate Energy Corp. ("IEC") and Triple M, L.L.C. ("Triple M"), agreed to sell defendant Native American Refinery Company ("NARCO") certain gas stations, convenience stores, and real estate. (SAC ¶ 15.) During the negotiations for this sale NARCO's CEO, defendant Steve O.Z. Finkel-Minkin ("Finkel-Minkin"), and NARCO's President, defendant Robert McKee ("McKee"), represented that NARCO was ready and able to remit the purchase price and showed Hansen transferable bank guarantees purportedly issued by defendant PT. Bank Negara Indonesia (Persero) ("BNI" or the "Bank") that were to be used by NARCO to secure its payment obligation to plaintiffs. (SAC ¶¶ 18-19.)

Thereafter, Hansen, IEC, and Triple M entered into a purchase and sale agreement with NARCO whereby Hansen agreed to transfer his assets and related liabilities to NARCO for $50 million. (SAC ¶¶ 22-23.) Following NARCO's initial failure to pay, NARCO's payment obligations to plaintiffs increased to $118 million. (SAC ¶¶ 153, 156,161, 162.) To secure NARCO's obligations to plaintiffs, NARCO provided the following purported BNI instruments:

- Bank Guarantees 421, 422, 423 (SAC ¶¶ 24-25);

2

- 21 standby letters of credit, Nos. 04BNIXII808 - 04BNINIXII828, dated May 27, 2004 (SAC ¶ 48);

- 5 standby letters of credit, Nos. LC/012.JKT.12009.V.2004/WED-LC/012.JKT.12012.V.2004/WED, dated May 13, 2004 (SAC ¶ 48);

- Bank Guarantees 509/HO-TD/V/2003 and 510/HO-TD/V/2003, maturity date of May 23, 2006 (SAC ¶ 49);

- Bank Guarantees 681/HO-TD/V/2003 and 682/HO-TD/V/2003, each with a maturity date of June 17, 2006 (SAC ¶ 49); and

- Bank Guarantee 028/HO-TD/II/2004 in the amount of $3 million payable to Triple M (SAC ¶ 55) (bank guarantees and standby letters of credit collectively "Financial Instruments").

At various points during the process, some efforts were made to confirm the validity of the Financial Instruments. Those efforts were made by Hansen, Finkel-Minkin, McKee, Mark McDougal ("McDougal"), a member and manager of Triple M, and Quinn Jensen ("Jensen"), an employee of Merrill Lynch whom Hansen approached in an attempt to use the Financial Instruments as collateral for a line of credit. Those efforts included the following:

- Hansen looked up information on a purported BNI website to see if names on the Financial Instruments matched names of officers of the Bank as described on the website. Although Hansen claims the names matched the website, the website no longer exists. (Deposition of Theodore L. Hansen, January 8, 2009 [Dkt. 180-4] ("Hansen Depo.") 163:20-25.)

3

- Hansen spoke on multiple occasions on the telephone with individuals purporting to be officers of BNI, specifically Drs. Firmansyah ("Firmansyah") and Eko Budiwiyono ("Budiwiyono"). These individuals stated that the Bank had a strong relationship with NARCO and that the bank guarantees held by NARCO were valid. (Affidavit of Theodore L. Hansen dated March 27, 2006 [Dkt. No. 8] ("Hansen Aff.") ¶¶ 2-3; Hansen Depo. at 65:4-25.)

- McDougal spoke on the telephone with individuals purporting to be representatives of BNI. Those individuals assured him that BNI had a strong relationship with NARCO and that a bank guarantee was valid and enforceable. (Affidavit of Mark McDougal dated 27 March 2006 [Dkt. No. 7] ("McDougal Aff.") ¶ 5.)

- McDougal called the purported Firmansyah at a number located on a purported BNI website on multiple occasions. The individual he spoke with stated the bank guarantees were authentic. Deposition of Mark McDougal dated January 9, 2009 [Dkt. 180-5] ("McDougal Depo.") 27:18-33:12.

- McDougal claims to have negotiated the terms of a guaranty directly with the purported Firmansyah. (Id.)

- Jensen contacted BNI's New York office on multiple occasions on the telephone using a number found in Merrill Lynch's internal records. The BNI employees would not confirm the authenticity and enforceability of the Financial Instruments but stated that the numbers read to them were consistent with general BNI guarantee numbers. (Deposition of Quinn M. Jensen, dated January 14, 2009 [Dkt 180-2] ("Jensen Depo.") 6:15; 22:7-

4

24:13.

- Finkel-Minkin called a purported BNI phone number and was connected to an individual purporting to be Firmansyah. (Deposition of Steve O.Z. Finkel-Minkin [Dkt. 250-1] ("Finkel-Minkin Depo.") 21:13-23:5.)

- Finkel-Minkin wanted to confirm that BNI signed the Financial Instruments and that BNI was aware of it. (Finkel-Minkin Depo. at 9:16-24.)

- McKee called the purported Firmansyah at the number located on BNI's purported website. (Deposition of Robert McKee [Dkt. 180-3] ("McKee Depo.") 276:14-277:25.)

- NARCO provided plaintiffs with written assurances purportedly from BNI confirming BNI's relationship with NARCO and the validity of the purported bank guarantees. (SAC ¶ 57.)

Ultimately, NARCO failed to meet its obligations to plaintiffs and others, and other creditors foreclosed on the assets that had been sold by plaintiffs to NARCO. (SAC ¶ 53.) Following NARCO's failure to make payment when due, plaintiffs contacted BNI concerning payment pursuant to the Financial Instruments. (SAC ¶ 59.) BNI responded by stating that it had nothing to do with the issuance of the purported Financial Instruments and that BNI did not authenticate any of them. (Defs.' Mem. In Support at 1.)

Procedural History

Plaintiffs sued BNI and others in February 2006 (Dkt. No. 1) and immediately sought and obtained a default judgment against BNI for $118 million. (Dkt. No. 5.) Plaintiffs annexed paper copies of the Financial Instruments to their default judgment. (Dkt. Nos. 7, 8.) The default

judgment was vacated pursuant to stipulation by counsel. (Dkt. No. 14.)

In October 2008, the Bank moved for judgment on the pleadings based upon its submission of fifteen declarations made by all of the Bank's current and former employees whose names and purported signatures appear on the Financial Instruments, as well as the individuals with whom plaintiffs and others purportedly spoke, and others (collectively "Declarants"). (Dkt. No. 156.) The Declarants stated that they did not sign any of the Financial Instruments, that they did not authorize anyone to sign their names, and that they never spoke with plaintiffs. (Declaration ("Decl.") of Saifuddien Hasan. ¶¶ 5-8; Eko Budiwiyono Decl. ¶¶ 3, 5-18; Rachmat Wiriaatmadja Decl. ¶¶ 5-7; Lilies Handayani Decl. ¶¶ 3, 7, 26-27; Gatot Siswoyo Decl. ¶¶ 4-5; Mr. Firmansyah Decl. ¶¶ 3-7; Drs. Moebarick AS Djatimoeda, MM Decl. ¶¶ 4-5; Utiek Kariayem Nawaningsih Decl. ¶¶ 4-8; Drs. Hadi Sutaryo, MM Decl. ¶¶ 4-6; Joppy Johanis Lamonge Decl. ¶¶ 3-5; Julietta R.B. Hutagalung Decl. ¶¶ 13-15; Toto Suharto Decl. ¶¶ 5-10; Mora Dharma Silitonga Decl. ¶¶ 4-5.) The Declarants also stated that the Financial Instruments were fraudulent on their face based upon their failure to comport with the Bank's practices for issuance of bank guarantees and standby letters of credit as well as Indonesian law. (Julietta R.B. Hutagalung Decl. ¶¶ 14-15, Lilies Handayani Decl. ¶¶ 25-27.)

In response to the evidence provided by the Bank, plaintiffs asserted that they needed discovery because they had not had the opportunity to cross-examine the Bank's Declarants. (Dkt. No. 160.) The court granted plaintiffs' request for jurisdictional discovery limited to the issue of whether any BNI officers or employees conducted commercial activity that satisfies the commercial activity exception under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §

6

1602, *et seq.* (Dkt. No. 213.) The court directed plaintiffs to start with the depositions of the 15

Declarants. (Id.)

The Bank appealed the court's decision, arguing *inter alia* that the scope of limited

jurisdictional discovery was overly broad. (Dkt. No. 182.) The Tenth Circuit affirmed this

court's denial of the Motion and dismissed for lack of appellate jurisdiction the portion of the

Bank's appeal related to the scope of discovery. The Appellate Court's Mandate issued on May

5, 2010. (Dkt. No. 208.)

Plaintiffs did nothing to take discovery or anything else until the Bank renewed its motion

for judgment on the pleadings in August 2010. (Dkt. No. 211.) In response, plaintiffs' then-

counsel moved to withdraw. (Dkt. No. 215.) While the cross-motions were pending, plaintiffs

served written discovery requests on the Bank, to which the Bank timely objected. (PT. Bank

Negara Indonesia's Objections To Plaintiff Theodore Hansen's First Set of Interrogatories, dated

November 2, 2010, Dkt. No. 250 Ex. 2.)

In December 2010, the court heard oral argument on the cross-motions. This court

denied the Bank's renewed motion and granted plaintiffs' counsel's withdrawal motion. (Dkt.

No. 224.) Plaintiffs' new and current counsel, the firm of Fillmore Spencer LLC, filed their

appearance in early January 2011. (Dkt. Nos. 225, 229.)

The court set a discovery deadline of May 31, 2011, giving plaintiffs nearly thirteen

months after the Mandate issued by the Tenth Circuit to conduct the limited jurisdictional

discovery plaintiffs requested. (Dkt. No. 237.) During this period, plaintiffs took only one

deposition. The sole deposition was of defendant Finkel-Minkin, the person against whom

plaintiffs asserted and obtained a default for claims over $118 million including breach of

contract, fraud, fraud in the inducement, civil conspiracy, federal and state securities fraud,

federal/civil RICO, promissory estoppel, quasi-contract/unjust enrichment, conversion, and

breach of the covenant of good faith and fair dealing. (Dkt. No. 94.) Plaintiffs did not depose,

and did not seek to depose, the Bank or any of the Declarants.

## DISCUSSION

The question before the court is whether plaintiffs have satisfied their burden of

production under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602, *et seq*.

("FSIA") to make an initial showing that the FSIA commercial activity exception to immunity

applies. <u>See</u> <u>Orient Mineral Co. v. Bank of China</u>, 506 F.3d 980, 991 (10th Cir. 2007). The court

holds that plaintiffs have not satisfied their burden of production under the FSIA.

## I.     Foreign Sovereign Immunities Act

Plaintiffs concede that BNI is a "foreign state" under the FSIA. (SAC ¶ 6.) The FSIA

provides the exclusive basis for obtaining jurisdiction over claims against a foreign state or its

instrumentalities in the United States. <u>See</u> <u>Permanent Mission of India to the United Nations v.</u>

<u>City of New York</u>, 123 S. Ct. 2352, 2355 (2007) (quoting <u>Argentina Republic v. Amerada Hess</u>

<u>Shipping Corp.</u>, 488 U.S. 428, 443 (1989)); <u>Republic of Argentina v. Weltover, Inc.</u>, 504 U.S.

607, 611 (1992); <u>Southway v. Central Bank of Nigeria</u>, 198 F.3d 1210, 1212 (10th Cir. 1999)

(<u>Southway II</u>); <u>Orient Mineral Co.</u>, 506 F.3d at 991.

As a foreign state under the FSIA, BNI is presumptively immune from subject matter and

personal jurisdiction of federal and state courts of the United States, 28 U.S.C. § 1604, unless

one of the exceptions to immunity set forth in 28 U.S.C. §§ 1605 through 1607 applies. See

Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 488 (1983); Orient Mineral Co., 506

F.3d at 991. Once a foreign state defendant has asserted its immunity, the burden falls upon the

plaintiff to "come forward with evidence implicating an exception." See, e.g., Southway v.

Central Bank of Nigeria, 328 F.3d 1267, 1271 (Southway IV) (citing Gen. Elec. Capital Corp. V.

Grossman, 991 F.2d 1376, 1382 (8th Cir. 1993)); Orient Mineral Co., 506 F.3d at 991. Here, BNI

has asserted its immunity and plaintiffs have come forward with evidence they argue implicates

the FSIA's commercial activity exception.

## II.    FSIA's Commercial Activity Exception

The commercial activity exception provides that a foreign state shall not be immune from

the jurisdiction of courts of the United States or of the States in any case:

> in which the action is based [i] upon a commercial activity carried on in the United
> States by the foreign state; or [ii] upon an act performed in the United States in
> connection with a commercial activity of the foreign state elsewhere; or [iii] upon an
> act outside the territory of the United States in connection with a commercial activity
> of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2) (alterations added).

Here, plaintiffs argue the following evidence implicates the FSIA's commercial activity

exception:

- Affidavit of Mark McDougal, dated March 27, 2006 (Dkt. No. 7);

- Affidavit of Theodore L. Hansen, dated March 27, 2006 (Dkt. No. 8);

- Deposition of Robert McKee, dated January 7, 2009 (Dkt. No. 180 Ex. 2);

- Deposition of Mark McDougal, dated January 7, 2009 (Dkt. No. 180 Ex. 4);

9

- Deposition of Theodore L. Hansen, dated January 8, 2009 (Dkt. No. 180 Ex. 3);

- Deposition of Quinn Jensen, dated January 14, 2009 (Dkt. No. 178 Ex. 1);

- Bank's Objections to Plaintiff Hansen's First Set of Interrogaties, dated November 2, 2010 (Dkt. No. 250 Ex. 2);

- Deposition of Steve O.Z. Finkel-Minkin, dated March 4, 2011 (Dkt. No. 250 Ex. 1);

- Declaration of Eko Budianto, dated August 4, 2011. (Dkt. No. 258.)

With the exception of Budianto's declaration, Finkel-Minkin's deposition, and the Bank's objections, this is the same body of evidence which plaintiffs possessed in the Bank's motion for judgment on the pleadings where the court granted plaintiffs' request for jurisdictional discovery. (Dkt. No. 213.)

Plaintiffs contend that this body of evidence implicates the FSIA's commercial activity exception in two ways. (Pls.' Mem. In Opposition at 38.) First, plaintiffs contend that statements contained in the affidavits and depositions of Hansen, Fink-Minkin, Jensen, McKee and McDougal create a genuine dispute of material fact about whether BNI confirmed the enforceability of the Financial Instruments and therefore a genuine dispute of material fact about whether BNI issued the Financial Statements. (Id.) Second, plaintiffs contend that Eko Budianto's declaration creates a genuine dispute of material fact about whether BNI issued the Financial Instruments. (Id.)

A. Statements from Hansen, Finkel-Minkin, Jensen, McKee and McDougal

Plaintiffs contend that statements contained in the affidavits and depositions of Hansen, Finkel-Minkin, Jensen, McKee and McDougal (collectively "HFJM&M Statements") create a

10

genuine dispute of material fact about whether BNI confirmed that the Financial Instruments are enforceable and therefore a genuine dispute of material fact about whether BNI issued the Financial Instruments. (See Id.)

According to the HFJM&M Statements, Hansen, Finkel-Minkin, Jensen, McKee and McDougal each made at least one phone call to an entity they believed to be BNI. (McDougal. Hansen Depo. at 163:15-165:25; Finkel-Minkin Depo. at 21:13-23:5; Jensen Depo. at 6:15, 22:7-24:13; McKee Depo. at 276:14-277:25; McDougal Depo. at 27:18-28:1.)  McKee and McDougal called numbers found on a website purporting to be BNI's website, Jensen called a number found in Merrill Lynch's internal records and it is unclear where Hansen and Finkel-Minkin found the numbers they called. (Id.)  Hansen, Finkel-Minkin, McKee, and McDougal talked with persons purporting to be BNI officers at the Bank's headquarters in Indonesia and Jensen spoke with BNI employees at the Bank's New York city branch. (Id.)

The employees with whom Jensen spoke at BNI's New York branch refused to confirm the validity of the Financial Statements and Finkel-Minkin and McKee had only general business conversations with purported BNI officers in Indonesia, however, Hansen and McDougal obtained statements from the purported BNI officers in Indonesia confirming that BNI issued the Financial Instruments and that the Financial Instruments were authentic, valid, and enforceable. (Id.)  Specifically, persons purporting to be Firmansyah and Budiwiyono confirmed to Hansen that BNI had a strong relationship with NARCO and that the bank guarantees held by NARCO were valid (Hansen Aff. ¶¶ 2-3; Hansen Depo. at 165:4-25) and a person purporting to be Firmansyah confirmed to McDougal that the bank guarantees were authentic, valid and

11

enforceable. (McDougal Aff. ¶ 5; McDougal Depo. at 27:18-33:12.)

Plaintiffs argue that these confirmations from individuals purporting to be Firmansyah and Budiwiyono ("Purported Firmansyah and Budiwiyono Statements") are sufficient to raise a viable issue of fact that BNI issued the Financial Instruments. (Pls.' Mem. In Opposition at 38.) The court disagrees.

The Purported Firmansyah and Budiwiyono Statements are inadmissible hearsay. Fed. R. Evid. 602. Plaintiffs argue that the statements are not hearsay because they constitute an admission by party opponent under Rule 801(d)(2). (Pls.' Mem. In Opposition at 38.) The court finds plaintiffs' argument unpersuasive. Before a statement can qualify as an *admission* by a party opponent, it must be established that the *party opponent* made the statement. Fed. R. Evid. 801(d)(2)(A). Here, plaintiffs fail to provide sufficient evidence that the actual Firmansyah and Budiwiyono who allegedly worked for BNI made the statements. Not only do Hansen, Finkel-Minkin, McKee, and McDougal lack the personal knowledge necessary to identify Budiwiyono or Firmansyah as the person on the other end of the phone line, but plaintiffs also fail to provide sufficient evidence showing that Hansen, Finkel-Minkin, McKee, and McDougal actually called BNI or used BNI's actual phone number as they fail to provide any phone records containing the numbers that they called. Plaintiffs rely on the fact that McKee, McDougal, and possibly Hansen called numbers listed on a purported BNI website which apparently no longer exists. (Hansen Depo. at 163:20-25.) This is simply insufficient.

Accordingly, the court finds that plaintiffs fail to establish that the purported statements were made by the *party opponent* and therefore fail to qualify the statements as an admission by

party opponent under Rule 801(d)(2). Thus, the Purported Firmansyah and Budiwiyono Statements are inadmissible hearsay and are excluded from the court's consideration of whether the evidence plaintiffs produced implicates the FSIA's commercial activity exception.

The court now turns its attention to plaintiffs' second contention.

B. The Declaration of Eko Budianto

Plaintiffs contend that the declaration of Eko Budianto creates a genuine dispute of material fact about whether BNI issued the Financial Instruments. (Pls.' Mem. In Opposition at 38.) The declaration states that in April of 2003 and October of 2004, Eko Budianto "act[ed] for NARCO and assisted in obtaining bank guarantees issued by [BNI]." (Declaration of Eko Budianto ("Budianto Decl."), ¶¶ 5, 6.) Such conclusory statements, however, should be excluded from consideration unless the declaration lays a foundation of the declarant's personal knowledge of the matter. Fed. R. Evid. 602. The statement in the declaration which comes the closest to satisfying the personal knowledge requirement of Rule 602 is paragraph nine, which states:

> As an agent of NARCO in Indonesia, I received funds from various parties, paid on behalf of NARCO, for the issuance of these bank guarantees. I paid those funds by submitting the fund to the appointed officials representing the collateral owner and they further depositing them into BNI Bank accounts as directed by Dr. Firmansyah through their bank officers, for issuance of these guarantees.

(Budianto Decl. ¶ 9.)

Although this statement comes the closest to establishing a foundation of personal knowledge for the declaration, the court finds that the statement does not satisfy Rule 602. The statement fails to give the most basic of details about the alleged deposit, such as how much money was involved, which BNI Bank accounts were used, and when the deposits were made.

13

Accordingly, the declaration violates Rule 602 because it lacks the necessary foundation to support a finding that Eko Budianto has personal knowledge of the matters he declares. Thus, the court excludes the Budianto Declaration from its consideration and accordingly finds that no reasonable fact-finder could find in favor of plaintiffs.

However, even if the court were to consider the Budianto Declaration, the declaration would still not allow a reasonable fact-finder to find that BNI issued the Financial Instruments. The language of the declaration is vague, confusing, and may actually state that Mr. Budianto deposited the funds with NARCO, *the collateral owner*, and not with BNI. (Budianto Decl. ¶ 9.) Nevertheless, even if the court interprets the language to mean what plaintiffs suggest it means – that Mr. Budianto deposited the funds directly with BNI – the declaration fails to allege sufficient facts to substantiate its conclusory statements. As stated above, the declaration fails to give the most basic of details about the alleged deposit, such as how much money was involved, which BNI Bank accounts were used, and when the deposits were made.

Additionally, the declaration's credibility is so suspect that the declaration itself may constitute a fraud on the court. Plaintiffs have never personally met Mr. Budianto. (Hansen Depo. at 218.) Mr. Budianto was not identified on either of Plaintiffs' Initial Disclosures or Plaintiffs' Amended Initial Disclosures although he was the apparent gatekeeper between Finkel-Minkin and the Bank. Mr. Budianto's declaration was made only after the limited-discovery deadline expired and in response to the current motion; furthermore, the bank guarantees attached to his declaration are significantly different from the Bank Guarantees plaintiffs have

14

been trying to enforce in this court since the inception of this case.[1] Thus, even if the court were to consider the Budianto Declaration, the declaration would still not allow a reasonable fact-finder to find that BNI issued the Financial Instruments. Accordingly, the court finds that the Budianto Declaration does not provide evidence which establishes the FSIA's commercial activity exception.

## CONCLUSION

The statements made by Hansen, Fink-Minkin, Jensen, McKee and McDougal do not establish the FSIA's commercial activity exception because the purported Firmansyah and Budiwiyono statements are inadmissible hearsay under Rule 802. Additionally, the declaration of Eko Budianto does not implicate the FSIA's commercial exception because the declaration lacks the necessary foundation of personal knowledge required by Rule 602. Accordingly, the court holds that plaintiffs have not satisfied their burden of production under the FSIA and GRANTS WITH PREJUDICE the Bank's motion for summary judgment.

DATED this 21st day of February, 2012

_____
Dee Benson
United States District Judge

---

[1]The differences include signatories, text, choice of governing law, fax number, SWIFT/BIC number, and cable address.

15